IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DELBERT PAULINO,

        Plaintiff,             CV F 04 6597 LJO GSA PC

  vs.                              FINDINGS AND RECOMMENDATION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC 29)

DEPT. OF CORRECTIONS, et al.,

        Defendants.

      Plaintiff is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion for summary judgment. Plaintiff has opposed the motion.

      Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation at California State Prison Lancaster. The complaint on which this action proceeds states a claim for relief against Defendants Todd and Muth for First Amendment violations concerning hair grooming policy and religious practices, and against Defendant Bryant for

interference with Plaintiff's mail.[1]

In the complaint, Plaintiff alleges that Defendants Muth and Todd conspired to deny Plaintiff his right to practice his religion. Plaintiff alleges he was required to cut his hair pursuant to Defendant Todd's orders. Plaintiff spoke with Defendant Muth and was advised that Muth had to enforce the policy. Plaintiff agreed to cut his hair on condition that it be sent home. Though Plaintiff did cut his hair, it was discarded. Plaintiff claims that the practice of his religion was burdened by cutting his hair.

As to Defendant Bryant, Plaintiff alleges that he violated Plaintiff's rights by opening mail addressed to Plaintiff. Plaintiff specifically alleges that the mail was from his attorney.

DEFENDANTS' CLAIMED UNDISPUTED FACTS

1. Plaintiff is a state prisoner who was incarcerated at California State Prison, Corcoran (CSP-Corcoran) from November 21, 2002 until July 14, 2003. (Plaintiff's Movement Printout, pp.1-2, attached as Exhibit 1.)

2. From July 14, 2003 until June 9, 2004, Plaintiff was incarcerated at California Correctional Institution at Tehachapi (CCI). (Exhibit 1.)

**A. Legal Mail Claim**

3. Plaintiff did not receive legal or confidential mail on four of the seven occasions he alleges: May 1, 2003, May 4, 2003, June 9, 2003, or in August of 2003. (N. Zavala Decl., ¶ 7, attached as 2; B. Bennett Decl., ¶ 4, attached as Exhibit 3; K. Field Decl., ¶ 3, attached as Exhibit 4.)

4. Due to the high volume of inmate mail received on a daily basis at CSP-Corcoran, all incoming inmate mail is opened by an automated letter opener. (N. Zavala Decl., ¶ 4.)

5. On occasion, legal mail is improperly sorted with non-legal mail and, as a result, is

---

[1] Plaintiff also named as defendants Wilson, Adkinson, Johnson, Alvoed, Hoppe and Anastecio. These defendants have been dismissed.

inadvertently opened outside the inmate's presence. (N. Zavala Decl., ¶ 4.)

6. When legal mail is improperly sorted with non-legal mail, and as a result is inadvertently opened outside the inmate's presence, the mail is not read by anyone and an informational chrono is filled out by the mail room staff to document the incident. (N. Zavala Decl., ¶ 4.)

7. On the remaining three occasions alleged by Plaintiff (May 21, 2003, May 27, 2003, and July 21, 2003), confidential correspondence addressed to him was inadvertently opened. (Informational Chronos, dated May 21, May 27 and July 21, 2003, attached as Exhibit 5.)

8. Of these three incidents, only the May 21, 2003 incident involved Defendant Bryant. (N. Zavala Decl., ¶ 6.)

9. With regard to the letter opened on May 21, 2003, the return address on the opened letter did not indicate that it was from an attorney. (December 4, 2003 letter to Plaintiff from Mailroom Sergeant X. Cano and Associate Warden S. Sherman, attached as Exhibit 6.)

10. The correspondence was opened by machine. Once it was discovered that the correspondence was of a legal nature, it was not read or searched, but was immediately sealed and forwarded to Plaintiff. (J. Bryant Decl., ¶ 3, attached as Exhibit 7.)

11. Defendant Bryant signed a CDC 128-B, which was provided to Plaintiff, indicating that Plaintiff's May 21, 2003 legal/confidential correspondence had been opened in error, but that it was neither read nor searched and was immediately sealed, logged and then delivered to Plaintiff. (Exhibit 5.)

**B. Religious Rights Claim**

12. Plaintiff follows Rastafarian religious beliefs which prohibit the cutting of his hair. (Compl. at 6, ¶ 17.)

13. Plaintiff and Defendant Muth agreed that Plaintiff would cut his hair, with the condition that he be permitted to send the cut hair home. (Compl. at p. 6-7, ¶¶ 18-23.)

14. The next day, Defendant Muth learned that Plaintiff would not be allowed to send his cut hair home because cut hair is not classified as personal property and it poses a potential health hazard. (California Correctional Institution Second Level Appeal Response, Log No. CCI-7-04-00575, attached as Exhibit 8; D. Muth Decl., ¶ 5, attached as Exhibit 9.)

15. After learning this, Defendant Muth informed Plaintiff that his cut hair would be destroyed. (Exhibit 8.)

### Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must

1  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.
2  Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam).  Nevertheless, inferences are not drawn out
3  of the air, and it is the opposing party's obligation to produce a factual predicate from which the
4  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
5  Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

6  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
7  show that there is some metaphysical doubt as to the material facts.  Where the record taken as a
8  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
9  issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**Legal Mail Claim**

Prisoners enjoy a First Amendment right to send and receive mail. See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir.1995) (*citing* Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)). But a prison may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. See Thornburgh, 490 U.S. at 413. The inspection for contraband of non-legal mail does not violate a prisoner's constitutional rights. See Witherow, 52 F.3d at 265-66 (upholding inspection of outgoing mail); Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.1991) (upholding inspection of incoming mail); Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir.1986) (upholding inspection of outgoing and incoming mail). Legal mail must be treated more cautiously, but prison officials may institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, see Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys). The opening and inspecting of "legal mail" outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to

1  petition the government. See O'Keefe v. Van Boening, 82 F.3d 322, 327 (9th Cir.1996) (*citing*
2  Lair v. Taum, 408 U.S. 1, 11 (1972)); *but cf*. Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir.1996),
3  *amended,* 135 F.3d 1318 (9th Cir.1998) (prison officials may open and inspect mail to prisoner
4  from courts outside prisoner's presence because mail from courts is not "legal mail"); Royse v.
5  Superior Court, 779 F.2d 573, 574-75 (9th Cir.1986) (mail from prisoners to court).

6  Defendant Bryant argues that on six of the seven alleged violations, Plaintiff failed to link
7  Bryant to the conduct at issue. In paragraph 39 of the complaint, Plaintiff sets forth seven
8  separate incidents in 2003: May 1, May 4, May 21, May 27, June 9, July 21, and August.
9  Defendants' Exhibit 4 is the declaration of K. Field, at Litigation Assistant employed by the
10 CDCR at CSP Corcoran.

11 Field declares that as a Litigation Assistant, he is a qualified custodian of records for CSP
12 Corcoran and has access to the current confidential mail log book as well as the archived log
13 book. Field further declares that "at the request of the Attorney General's Office, I reviewed the
14 archived confidential mail log book of the Administrative Segregation Unit at CSP Corcoran for
15 May 1, 2003, May 4, 2003, June 9, 2003, and August of 2003. As a result of this search, there
16 are no records for May 1, 2003, May 4, 2003, or June 9, 2003. The earliest log book entries
17 begin on June 11, 2003." Field decl., ¶ 3.

18 Due to the high volume of inmate mail received on a daily basis at CSP Corcoran, all
19 incoming inmate mail is opened by an automated letter opener. Declaration of Office Assistant
20 N. Zavala, ¶ 4. On occasion, legal mail is improperly sorted with non-legal mail and, as a result,
21 is inadvertently opened outside the inmate's presence. When this occurs, it is not read or
22 searched by anyone and a CDC 128-B is filled out by the mail room staff to document the
23 incident. A copy of the CDC 128-B is given to the inmate, placed in his c-file, and placed in the
24 mail room and a copy issued to the inmate. Id.

25 Zavala further declares that "I reviewed CSP Corcoran's legal/confidential mail logs and
26

7

located CDC 128-Bs for legal/confidential mail received for inmate Paulino on the following dates: The CDC 128-B for May 21, 2003, was signed by J. Bryant. The CDC 128-B for May 27, 2003, was signed by K. Bonilla. The CDC 128-B for July 21, 2003, was signed by S. Butler. Zavala Decl., ¶ 6.

Defendant Bryant, an Office Assistant employed by the CDCR, declares that on May 21, 2003, "Inmate Paulino's legal mail was processed as non-confidential correspondence in accordance with California Code of Regulations, Title 15, Section 3143. As a result, the correspondence was opened by machine. Once it was discovered that the correspondence was of a legal nature, it was not read or searched, but was immediately sealed and forwarded to inmate Paulino." Bryant Decl., ¶ 3.

The Court finds that Defendant Bryant has come forward with evidence that establishes the lack of a triable issue of fact - evidence that Defendant Bryant did not intentionally open Plaintiff's legal or confidential mail outside of Plaintiff's presence and read the correspondence. As Defendant notes, the only instance where he is specifically charged with opening and reading Plaintiff's mail is on May 21, 2003. Defendant Bryant notes that regarding that letter, the return address on the letter does not indicate it was from an attorney. Id., ¶ 4. Even if it had been from an attorney, the inadvertent opening of legal mail outside an inmate's presence, while not to be condoned, is not actionable as a constitutional violation. Brewer v. Williams, 3 F.3d 816, 825 (5th Cir. 1993); Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir. 1989)(negligence does not rise to the level of a constitutional violation); see also Daniels v. Williams, 474 U.S. 327, 333 (1986)(negligence is insufficient to sustain a Section 1983 claim).

The Burden shifts to Plaintiff to come forward with evidence of a triable issue of fact - evidence that Bryant intentionally opened legal/confidential mail addressed to Plaintiff outside the presence of Plaintiff.

PLAINTIFF'S DISPUTED FACTS REGARDING MAIL CLAIM[2]

1. Plaintiff contends that he did receive legal/confidential mail in May, June and August of 2003.  Plaintiff makes reference to an unspecified exhibit attached to the complaint.

2. Plaintiff submits as Exhibit 22 a letter from his attorney.  The letter indicates that a previous letter was returned to the attorney from the prison, and another letter indicates the attorney's concern that Plaintiff may not be receiving his mail.

3. Plaintiff submits Exhibit 25, a declaration of another inmate.  Plaintiff's statement of disputed fact is that "N.Zavala was in cahoos [sic] with J. Bryant from the outset, as he too was withholding and opening mail outside of Plaintiff's presence."

4. The legislature and the precedence set in the United States Supreme Court makes it clear that mail from attorneys are not to be opened outside of the presence of the person to whom it is addressed.

5. Plaintiff was not housed at CSP Corcoran in August of 2003; however, the mail was sent to CSP-COR and was re-routed to CCI-Tehachapi.  Therefore, it would not be on any log from CSP-COR.  Plaintiff refers to his Exhibit 22, the above referenced letter from his attorney.

6. Plaintiff was retaliated against Defendant Bryant and her cohorts for lodging a complaint against her.  Prison officials even attempted to chill Plaintiff's right to file grievances.  Plaintiff refers to his Exhibit 21.  Exhibit 21 is a letter from Plaintiff to the Appeals coordinator, expressing Plaintiff's dissatisfaction with the inmate grievance process.

7. Plaintiff disputes that the mail was opened by machine when 50% of Bryant's job description requires the sorting of mail.  High volume of mail content does not excuse violating

---

[2] Plaintiff's opposition includes his statement of facts that he contends are in dispute.  Plaintiff also submits a memorandum in opposition that includes lengthy legal arguments.  The arguments set forth in the memorandum are general in nature, and do not direct the Court to facts offered by Plaintiff that create a triable issue of fact.  Plaintiff does, however, set forth arguments in his statement of disputed facts that he contends create a triable issue of fact.  Because Plaintiff sets forth specific arguments at to each disputed fact, the Court will list the facts as offered by Plaintiff, then address Plaintiff's arguments.

constitutional rights. Plaintiff makes no reference to an Exhibit.

Regarding Plaintiff's disputed fact number 1, that he did not receive his legal/confidential mail in May, June and August of 2003, The issue is whether Defendant Bryant deliberately opened mail on the specific dates at issue. That Plaintiff may or may not have received mail does not constitute evidence, or lead to an inference that Bryant deliberately opened his mail.

Regarding disputed fact number 2, the letter from Plaintiff's attorney indicating that a previous letter was returned, Defendant Bryant's liability does not turn on whether or not Plaintiff received his mail, but on whether Bryant intentionally opened it outside Plaintiff's presence.

Regarding disputed fact number 3, the declaration referred to as Exhibit 25 does not refer to any conduct on behalf of Defendant Bryant.

Regarding disputed fact number 4, Plaintiff does not make any reference to evidence. It is undisputed that it is a violation of prison regulations to open legal/confidential mail outside an inmate's presence.

Regarding disputed facts number 5 and 6 , there is nothing in the exhibits referred to that infers or addresses specific conduct by Defendant Bryant.

Regarding disputed fact number 7, Plaintiff makes no reference to an exhibit. It is Plaintiff's view that a high volume of mail does not excuse violating constitutional rights. Plaintiff offers no evidence that a constitutional right of his was violated.

In his opposition, Plaintiff sets forth arguments supporting the legal proposition that his legal mail should not have been opened outside his presence. Plaintiff's central argument is that his mail was opened, and therefore Defendant Bryant is liable. Plaintiff has not, however, come forward with any evidence that creates a triable issue of fact as to whether Bryant intentionally opened Plaintiff's legal mail. It is undisputed that Plaintiff's mail was opened. Defendant

Bryant has come forward with evidence that she did not intentionally open Plaintiff's legal mail. Plaintiff offers no evidence to the contrary. Judgment should therefore be entered in Defendant Bryant's favor on this claim.

**Religious Freedom Claim**

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. Id.; McElyea v. Babbitt, 833 F.3d 2d 196, 197 (9th Cir. 1987).

Prison regulations alleged to infringe on the religious exercise right must be evaluated under the "reasonableness" test set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); O'Lone, 382 U.S. at 349; Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997)(recognizing that the United States Supreme Court's recent decision in City of Boerne v. P.F. Flores, 521 U.S. 507 (1997), invalidated the Religious Freedom Restoration Act and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

In determining the reasonableness of a challenged restriction on First Amendment rights, the court considers four factors. First, there must be a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it, and the governmental objective must itself be a legitimate and neutral one. A second consideration is whether alternative means of exercising the right on which the regulation impinges remain open to prison inmates. A third consideration is the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. Allen v. Toombs, 827

F.2d 563, 567 (9th Cir. 1987) (*citing* Turner v. Safley, 482 U.S. at 89-91). "In order to establish a free exercise violation, [plaintiff] must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith." Freeman at 736.

In his complaint, Plaintiff alleged that being forced to cut his hair burdened the practice of his religion.

As noted in Defendants' statement of undisputed facts, it is undisputed that Plaintiff follows Rastafarian religious beliefs which prohibit the cutting of his hair. It is undisputed that Plaintiff and Defendant Muth agreed that Plaintiff would cut his hair, with the condition that he be permitted to send the cut hair home. These are allegations in the complaint, and Defendants do not dispute them.

Defendants' Exhibit 9 is the declaration of D. Muth, which indicates that the day after the agreement was made, Defendant Muth learned that Plaintiff would not be allowed to send his cut hair home because cut hair is not classified as personal property and it poses a potential health hazard. After learning of this, Defendant Muth informed Plaintiff that his cut hair would be destroyed. Id.

Defendants argue that the undisputed facts, that Plaintiff had his hair cut and it was destroyed, do not subject them to liability. The evidence submitted by Defendants establishes that they acted pursuant to CDCR regulations. Defendants correctly argue that the Ninth Circuit has determined that the CDCR's 1997 grooming regulations regarding hair length serve legitimate penological interests and do not infringe in inmate's First Amendment rights. Henderson v. Terhune, 379 F.3d 709 (9th Cir. 2004). Most recently, the Ninth Circuit held that the CDCR's grooming regulations further a compelling government interest - prison security).

Defendant Muth specifically declares that he cut Plaintiff's hair in accordance with the grooming regulations. Though he did tell Plaintiff he could send his hair home, he subsequently discovered that cut hair posed a health hazard. Muth Decl., ¶ 5.

The evidence submitted by Defendants establishes that they acted pursuant to regulations, and did not act unreasonably in cutting Plaintiff's hair. The evidence indicates that Defendants were acting pursuant to a regulation that has been found to be constitutional. They have therefore met their burden on summary judgment.

To meet his burden, Plaintiff must come forward with evidence that establishes a triable issue of fact - evidence that Defendants were acting pursuant to a constitutionally invalid policy.

<u>PLAINTIFF'S DISPUTED FACTS REGARDING RELIGIOUS EXPRESSION</u>[3]

1. Muth denied Plaintiff all movement as an exagerated [sic] response and as a enforcement of an underground rule that was in stark contrast to the U.S. Constitution.

2. Muth coerced and forced Plaintiff to cut his hair under the condition that he would be able to send his holy artifacts home, "for religious purposes."

3. Muth was obviously in a position of power to authorize and arrange for the artifacts to be sent home, as he entered into a written contract to do so. This was witnessed by a witness who had first hand knowledge of the colloquy. Plaintiff refers to his Exhibit 26. Exhibit 26 includes copies of documents related to an inmate grievance filed by Plaintiff. The grievance addresses the issue of Plaintiff's access to the law library.

4. Muth assured Plaintiff that he send his artifacts home. There was never any issue about health hazards, as the hair was placed in a plastic bag. Not until after the hair was misplaced/discarded and Plaintiff filed a grievance did the issue of health hazard come into play.

Regarding disputed fact number 1, Plaintiff offers no evidence, and does not direct the Court to any exhibits offered in support of a legal claim. There are no allegations that Muth

---

[3] Plaintiff's opposition includes his statement of facts that he contends are in dispute. Plaintiff also submits a memorandum in opposition that includes lengthy legal arguments. The arguments set forth in the memorandum are general in nature, and do not direct the Court to facts offered by Plaintiff that create a triable issue of fact. Plaintiff does, however, set forth arguments in his statement of disputed facts that he contends create a triable issue of fact. Because Plaintiff sets forth specific arguments at to each disputed fact, the Court will list the facts as offered by Plaintiff, then address Plaintiff's arguments.

"denied Plaintiff all movement." Muth's liability is related to the cutting and removal of Plaintiff's hair. Plaintiff's contention that Muth "denied him all movement" is vague and irrelevant.

Regarding disputed fact number 2, Plaintiff offers no evidence to support his contention that Muth "coerced and forced" Plaintiff to cut his hair under the condition that he could send it home. The undisputed facts indicate that Muth was acting pursuant to prison policy.

Regarding disputed fact number 3, the exhibit referred to by Plaintiff includes copies of documents related to an inmate grievance filed by Plaintiff. The grievance addresses the issue of Plaintiff's access to the law library. There are no issues of law library access in this lawsuit.

Regarding disputed fact number 4, that the issue of health hazard arose after Plaintiff's hair was discarded, that Muth was mistaken about Plaintiff's ability to send his hair home does not subject Muth to liability. There is no evidence that Muth's decision was based on anything other than prison policy.

In his opposition, Plaintiff concludes that there is a genuine issue of fact. Plaintiff does not point to that specific fact, nor does Plaintiff offer any evidence that the regulations at issue are unconstitutional, or that Defendants acted pursuant to any regulation or policy that was not reasonably related to a legitimate penological purpose. That Defendant Bryant mistakenly promised Plaintiff that he could send his hair home, while unfortunate, does not rise to the level of a constitutional violation.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment be granted in its entirety, and judgment be entered in favor of Defendants and against Plaintiff on his claims regarding mail and religious expression.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.   The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   March 4, 2008**              /s/ Gary S. Austin
                                                         UNITED STATES MAGISTRATE JUDGE